FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ --- 2 6 --- ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

WENDELL OROSCO,

                Plaintiff,

-against-

THE LONG ISLAND JEWISH
MEDICAL CENTER,

                Defendant.
-------------------------------------------------X

**REPORT AND
RECOMMENDATION
05 CV 3418 (CBA)(LB)**

BLOOM, United States Magistrate Judge:

    Plaintiff, brings this *pro se* employment discrimination action pursuant to the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.* and the New York State Human Rights Law, Executive Law § 296 *et seq.* The Honorable Carol B. Amon, United States District Judge, referred plaintiff's motion for a preliminary injunction and defendant's motion for summary judgment to the undersigned for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that plaintiff's motion for a preliminary injunction should be denied, defendant's motion for summary judgment should be granted, and this action should be dismissed.

## BACKGROUND

    Plaintiff was employed by defendant as a Food Service Associate from May 2003, until his discharge on November 10, 2004. Plaintiff alleges that defendant discriminated against him and terminated his employment because he was perceived as being HIV positive. Plaintiff alleges that on May 2, 2004, his girlfriend, who is HIV positive, was admitted to the Long Island Jewish Medical Center to give birth to plaintiff's child. Plaintiff further alleges that upon

1

admission to the hospital, one of plaintiff's co-workers, Kathy De La Cruz, a food service employee assigned to the room occupied by plaintiff's girlfriend, observed her medical chart and became aware of plaintiff's girlfriend's HIV status. Approximately one week later and continuing through the rest of his tenure with defendant, plaintiff alleges he was subjected to jokes and comments by co-workers and supervisors regarding his perceived HIV status.

## **PROCEDURAL HISTORY**

Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") on December 1, 2004. See State Division of Human Rights Verified Complaint ("Exhibit 1").[1] On March 22, 2005, the NYSDHR issued a Determination and Order After Investigation finding no probable cause to believe that defendant engaged in the unlawful discrimination complained of by the plaintiff. See State Division of Human Rights Determination and Order ("Exhibit 4"). On May 6, 2005, the Equal Employment Opportunity Commission ("EEOC") adopted those findings and issued plaintiff a right-to-sue letter. See EEOC Right-to-Sue Letter ("Exhibit 5).

Plaintiff filed his *pro se* complaint in this Court on July 13, 2005. Plaintiff thereafter retained counsel and on November 28, 2005, filed an amended complaint seeking: (1) a declaration that plaintiff's rights were violated; (2) a permanent injunction enjoining defendant from engaging in illegal and unlawful customs, policies and practices; (3) compensatory damages; (4) punitive damages; (5) back pay and front pay; (6) reasonable attorney fees; (7) pre- and post-judgment interest; (8) plaintiff's reinstatement; and (9) other equitable relief. See

---

[1] Unless otherwise stated, all Exhibits are contained in the separately bound volume labeled as Defendant's Summary Judgment Exhibits.

2

Amended Compl. at 5-6. Defendant filed an answer to the amended complaint on December 16, 2005.

The parties conducted discovery. On October 23, 2006, plaintiff's counsel Christopher K. Collotta, moved to withdraw as counsel and the motion was granted. On November 6, 2006, plaintiff moved *pro se* for a preliminary injunction. On November 29, 2006, plaintiff requested pro bono counsel pursuant to 28 U.S.C. § 1915 (e).[2] On January 12, 2007, defendant opposed plaintiff's request for a preliminary injunction. Thereafter, defendant submitted a motion for summary judgment and served plaintiff with the requisite notice pursuant to Local Civil Rule 56.2 (Notice to Pro Se Litigants Opposing a Summary Judgment Motion). Plaintiff opposed the motion for summary judgment.[3]

## Preliminary Injunction

Plaintiff's motion for preliminary injunction seeks to enjoin defendant from calling his potential employers to inform them that plaintiff and plaintiff's girlfriend are HIV positive. See Pl's Affirmation in Support of Motion for Preliminary Injunction ("Pl's Aff. "). Specifically,

---

[2] Plaintiff's request for pro bono counsel under 28 U.S.C. §1915(e) is denied as plaintiff's complaint does not meet the threshhold requirement that plaintiff's position seems likely to be of substance. See Ferrelli v. River Manor Health Care Center, 323 F.3d 196 203 (2d Cir. 2003).

[3] Although plaintiff opposed defendant's motion, he has failed to contest any of the facts in defendant's Rule 56.1 statement and as such, the Court may deem all the facts in defendant's Rule 56.1 statement admitted. See Loc. R. 56.1(c). Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." Jessamy v. City of New Rochelle, 292 F. Supp.2d 498, 504-05 (S.D.N.Y. 2003) (quoting NAS Elecs., Inc. v. Transtech Elecs, PTE Ltd., 262 F. Supp.2d 134, 139 (S.D.N.Y. 2003)). However, given plaintiff's *pro se* status, the Court will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. See Jessamy, 292 F. Supp.2d at 504.

plaintiff alleges that he has held a succession of jobs following his termination from employment by defendant, and that defendant called each of his employers and told them that plaintiff is HIV positive. Plaintiff alleges:

> Two months after being terminated by LIJ for my allege [sic] HIV status, I started working at The New York Hospital Queens. LIJ called and told the managers and employees I was HIV positive. I could not take it any more so I resigned after a few weeks. A few days later I started working at the New Parkway Hospital the exact same thing started happening again, but this time I was being harassed by the employees on the perception of being HIV positive . . . Four months later I started working at The Hospital for Joint Diseases, again LIJ was calling and telling the managers and employees about my allege [sic] HIV status.

See Pl's Aff. at 2.

Next, plaintiff alleges he started "volunteering" at M.D.S., a pharmaceutical company, and on his first and only weekend volunteering, LIJ called the company and informed the staff that plaintiff was HIV positive. See Pl's Aff. at 3. Morever, plaintiff claims that a few months later, after working for Quest Merchandising for one day, he resigned because he overheard a Home Depot manager telling a Quest Merchandising manager "someone keeps calling and telling her that [plaintiff] has HIV and that they should fire him because he is a bad worker." See Pl's Aff. at 3. Finally, plaintiff alleges that he left his employment at First Rehabilitation Insurance after two weeks because "LIJ was calling and telling the employees and manager that I'm not the one with the HIV virus its my girlfriend. They went on to say that I am receiving mental health and to be careful because [plaintiff] is crazy." See Pl's Aff. at 4.

To obtain a preliminary injunction, the moving party must show irreparable harm, and either (a) the likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor. Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004). A moving party

4

must demonstrate irreparable harm before any other requirement for the issuance of an injunction may be considered. Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002).

Plaintiff fails to demonstrate irreparable harm as required for preliminary injunctive relief. The Second Circuit has defined "irreparable harm" as "certain and imminent harm for which a monetary award does not adequately compensate," noting that "only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief." Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113-14 (2d Cir. 2003); see also Kamerling, 295 F.3d at 214 ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." (internal quotation omitted)).

The Court will not grant preliminary injunctive relief based only on plaintiff's speculative and unsubstantiated assertions. See Kamerling, 295 F.3d at 214 (noting that preliminary relief cannot be founded on "remote or speculative" harms). First, plaintiff has produced no evidence to show that the events plaintiff complains of actually occurred or that defendant is connected to the harm plaintiff alleges.[4] Moreover, plaintiff has made only conclusory allegations which include: (a) a conspiracy by defendant to deprive plaintiff of future employment opportunities and; (b) that

---

[4] Plaintiff has a history of mental health problems and has been treated for paranoia. Plaintiff's deposition reveals that he has been prescribed and taken Zoloft, an antidepressant and Zyprexa, an antipyschotic "to not think that everybody is talking about me, I'm being followed, and stuff like that." Pl. Dep. at 403: 20-22. Plaintiff's records from the Advanced Center for Psychotherapy reveal that plaintiff suffers from paranoid thinking and auditory hallucinations. See Plaintiff's Records from Advanced Center for Psychotherapy, annexed to Defendant's Opposition for Preliminary Injunction ("Exhibit C"). Steven Fayer, M.D., LIJ's expert, opines that plaintiff suffers from "manifest distinct paranoid ideation and delusions." See Declaration of Steven A. Fayer, M.D., annexed to Defendant's Opposition for Preliminary Injunction ("Exhibit E").

defendant threatened plaintiff's life as well as the life of his children in order to have plaintiff drop his suit against defendant.[5] See Pl's Aff. at 4-5. However, plaintiff's allegations, regarding the man in his downstairs neighbor's home who has threatened him is not connected to defendant and does not establish irreparable harm.

The real injury here is plaintiff's loss of wages, which would be compensable by damages. The Supreme Court addressed the issue of irreparable harm in the context of termination of employment in Sampson v. Murray, 415 U.S. 61, 89-92 (1974). In Sampson, the Court held that injuries such as loss of income, damage to reputation, and difficulty in finding other employment do not rise to the level of irreparable injury necessary to obtain a preliminary injunction. Id. As a discharged employee, plaintiff may be awarded back pay, the value of any lost benefits or earnings, and reinstatement if the employee prevails on the merits of the claim. Therefore, these injuries are generally insufficient to demonstrate irreparable harm. See Ahmad v. Long Island Univ., 18 F.Supp.2d 245, 249 (E.D.N.Y. 1998) (plaintiff must show that injury is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages). Thus, a party seeking injunctive relief who alleges only loss of earnings and other related harm fails to establish irreparable injury because a harm that can be remedied by

---

[5] Plaintiff states that:

> That there is a brown skin black man about 6 feet 2" around 37-40 years threatening my life. This has been going on for a month now. The man will be at the lady's home downstairs right below me saying Wendell we're watching your every move so you better drop the case. On 11/5/06 at 4:30 am the same man was right outside my door saying I'm going to kill you. He went on to say I'm not going to make it till Monday to see a lawyer, that he knows the lawyer is specialize in employment law. I have a picture of this man. But he specialize in killing people.

Pl's Aff. at 5.

6

payment of damages is not irreparable. See Moore v. Consol. Edison Co., 409 F.3d 506, 510 (2d Cir. 2005) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances.").

Here, even if the Court found plaintiff's economic circumstances extraordinary, plaintiff does not demonstrate a clear and substantial likelihood of success on the merits. Accordingly, plaintiff's motion for a preliminary injunction should be denied.

## DISCUSSION

### Standard of Review

A motion for summary judgment may be granted when a court "determines that there is no genuine issue of material fact to be tried." Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (citing Fed. R. Civ. P. 56(c) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable juror could return a verdict for the nonmoving party.'" Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). "The trial court's function in deciding such a motion is not to weigh evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

"When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denial of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In other words the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its

7

favor. Anderson, 477 U.S. at 257. Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat summary judgment. Anderson, 477 U.S. at 252.

Finally, where, as here, plaintiff is proceeding *pro se*, the Court is obliged to "read [his] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## AMERICANS WITH DISABILITIES ACT

Plaintiff alleges defendant unlawfully terminated him in violation of the ADA which provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a).

Employment discrimination claims under the ADA are evaluated using the three-part burden-shifting analysis set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973) and its progeny. See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 48 (2d Cir. 2002) (applying the McDonnell Douglas burden-shifting framework to analyze a claim of intentional discrimination under the ADA). Plaintiff bears the initial burden of proving a *prima facie* case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). This burden is de minimis. Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). Once plaintiff establishes a *prima facie* case, the employer must demonstrate a legitimate non-discriminatory reason for the adverse employment action. Id. at 506-07; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). The plaintiff carries the burden of persuasion that

the proffered reason is a pretext and that the adverse action was motivated, at least in part, by discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006).

In order to establish a *prima facie* case of discrimination, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir. 2003); Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998); Messer v. Board of Educ. of City of New York, No. 01 CV 6129, 2007 WL 136027, at *10 (E.D.N.Y. Jan. 16, 2007).

### Plaintiff's Prima Facie Case

First, the Court must address whether plaintiff establishes a *prima facie* case of disability discrimination. To be considered disabled for ADA purposes, a person must establish that he has an impairment that substantially limits a major life activity. Sutton v. United Airlines, Inc., 527 U.S. 471, 489 (1999). Here, plaintiff does not allege that he had a disability, but rather, that defendant perceived him as disabled.

In a perceived disability case, the plaintiff may establish a *prima facie* case by offering evidence tending to show that (1) he had an impairment that was not substantially limiting, but was treated as though the impairment was substantially limiting; (2) he had an impairment that was substantially limiting only because of the attitudes of others toward the impairment; or (3) that he had no impairment at all, but was regarded by his employer as having a substantially limiting impairment. See 29 C.F.R. § 1630.2 (l)(1)-(3); Colwell v. Suffolk Cty. Police Dept., 158

F.3d 635, 641 (2d Cir. 1998); Temple v. Board of Educ. of the City of New York, 322 F.Supp.2d 277, 279 (E.D.N.Y. 2004).

Here, plaintiff's allegations fall under the third prong of the perceived disability test. A "regarded as" claim "'turns on the employer's perception of the employee' and is therefore 'a question of intent, not whether the employee has a disability.'" See Capobianco v. City of New York, 422 F.3d 47, 57 (2d Cir. 2005) (citation omitted); Manik v. Avram, No. 06 Civ 477, 2006 WL 2942854, at *5 (S.D.N.Y. Oct. 13, 2006). The Second Circuit has held that a plaintiff must do more than show that his employer regarded him as "somehow disabled; rather, the plaintiff must show that the employer regarded [him] as disabled within the meaning of the ADA." Colwell, 158 F.3d at 646 (emphasis omitted); accord Jacques v. DiMarzio, Inc., 386 F.3d 192, 201 (2d Cir. 2004); Duffett v. Mineta, 432 F.Supp.2d 293, 298 (E.D.N.Y. 2006). Plaintiff must therefore establish "that [defendant] perceived [him] to be incapable of working in a broad range of jobs suitable for persons of [his] age, experience, and training." Colwell, 168 F.3d at 647. Plaintiff has failed to make such a showing.

Plaintiff alleges that he was terminated not for his poor work performance, but because he was perceived by his supervisors as HIV positive. Specifically, plaintiff alleges he was terminated after he argued with his supervisor Albert Morgan ("Morgan") over Morgan's repeated threats and taunts regarding plaintiff's HIV status. Amended Complaint at ¶ 20. Defendant argues that plaintiff cannot make out a *prima facie* case of perceived disability discrimination because he cannot establish that defendant regarded him as significantly limited in a major life activity. See Def.'s Mem. Sum. J. at 9-10.

In support of the motion for summary judgment, defendant provides the affidavits of

plaintiff's supervisors: Anna Marie Ventura, Assistant Director of Food and Nutrition Services ("Ventura Aff."); Garbens Pierre, Cafeteria Manager ("Pierre Aff."); and Morgan, Cafeteria Chief Manager ("Morgan Aff."). As discussed in these affidavits of plaintiff's supervisors, plaintiff was expected to perform all of his job responsibilities including the handling and preparation of food through his last day of employment. See Ventura Aff. at ¶¶ 12, 33, 39; Pierre Aff. at ¶¶ 4, 6, 27; Morgan Aff. at ¶¶ 4, 21, 27.

Moreover, Ventura alleges that it was not until plaintiff was disciplined by Morgan for poor work performance that plaintiff began to make allegations against Morgan. See Morgan's letter dated October 15, 2004 ("Exhibit 21"); Plaintiff's complaint dated October 18, 2004 ("Exhibit 22"); Ventura Aff. at ¶ 36. In response to plaintiff's October 18, 2004 complaint, Pierre held an investigatory meeting with plaintiff, plaintiff's union delegate, plaintiff's alleged witness and Morgan. See Pierre Aff. at ¶ 31. At that meeting plaintiff's witness denied ever hearing Morgan threaten or taunt plaintiff. Furthermore, Morgan denied that he ever threatened or taunted plaintiff. See Pierre Aff. at ¶¶ 31-32. Accordingly, defendant found no basis for plaintiff's allegations against Morgan.

Plaintiff's attempt to show that Morgan treated him with discriminatory animus based on his alleged perception that plaintiff was HIV positive is belied by the following evidence in the record. On September 30, 2004, plaintiff sliced open his finger while cutting a bagel; Morgan came to plaintiff's aid and placed his bare hand on plaintiff's finger to stop the bleeding. Morgan then proceeded to wash and bandage plaintiff's wound. See Morgan Aff. at ¶ 6; Pierre Aff. at ¶ 33. Morgan states that had he perceived plaintiff to be HIV positive, he would not have used his bare hand to stop the bleeding. See Morgan Aff. at ¶ 6. Although this incident was also witnessed by

11

Pierre, plaintiff denies that it ever happened. See Pl. Dep. at 415: 17-25; 416: 2-17.

Plaintiff fails to present any evidence that his co-workers or supervisors perceived him as HIV positive. Moreover, plaintiff's opposition papers fail to specify what major life activity defendant believed was "substantially limited" by plaintiff's perceived impairment. Almond v. Westchester County Dept. of Corrections, 425 F.Supp.2d 394, 399 (S.D.N.Y. 2006); see, e.g., Weltz v. City of New York, No. 99 Civ. 3932, 2004 WL 1907309, at * 3-7 (S.D.N.Y. Aug. 25, 2004) ("Plaintiff is ... required to adduce evidence to show that Defendant regarded him as having an impairment that substantially limited some major life activity, and Plaintiff has not done so."). Accordingly, plaintiff fails to establish, a *prima facie* case of disability discrimination under the ADA.

### Defendant's Legitimate, Non-Discriminatory Reason For Its Action

Assuming *arguendo*, that plaintiff established a *prima facie* case of disability discrimination, defendant states a legitimate non-discriminatory reason for plaintiff's termination. Defendant maintains that plaintiff was discharged because of his poor work performance and for violating the defendant's policy which prohibited violence in the workplace.

LIJ maintains a written policy prohibiting violence in the workplace. The policy specifically

states that "[i]ntimidation, verbal threats, non-verbal threats or physical acts of violence against any individual . . . will not be tolerated." See Violence in the Workplace Part IV-13 ("Exhibit 11"); Ventura Aff. ¶ 8. In addition, at the time of plaintiff's hire and annually thereafter, all LIJ

employees receive a package which includes defendant's Rules of Conduct Policy and Workplace Violence Policy. Ventura Aff. ¶ 9. The Rules of Conduct prohibits, *inter alia*, fighting, abusive language, insubordination. See Medical Center Wide Program For Mandated Topics 2002 and 2003 ("Exhibit 12"); Ventura Aff. ¶ 9. Plaintiff signed an acknowledgment confirming his receipt of the 2002 and 2003 packet. Id. Moreover, plaintiff also acknowledged receipt of defendant's rules prohibiting fighting in the workplace from LIJ's Food and Nutrition Department. See Department of Food and Nutrition Services Rules and Regulations ("Exhibit 13").

The record herein documents a history of plaintiff's poor job performance and plaintiff's violation of defendant's violence in the workplace policy. On June 13, 2003, approximately one month after plaintiff began his employment at LIJ, plaintiff was counseled concerning his unprofessional conduct toward two female co-workers after the co-workers reported that plaintiff stared at them in an inappropriate and intimidating manner. See Ventura Aff. at ¶¶ 14-16; Pierre Aff. at ¶11; Morgan Aff. at ¶ 8. Following that meeting, Pierre in a handwritten memorandum, informed plaintiff that if he fails to correct his behavior he would be subject to formal disciplinary action. See Exhibit 16. Plaintiff's performance evaluation dated June 18, 2003, showed that plaintiff received a poor grade in seven out of eleven categories along with a comment that plaintiff "must improve in all aspect of the operation, must increase productivity, promotes teamwork and changes in behavior." See Exhibit 29. On August 31, 2003, Pierre issued a "verbal notice" which was memorialized in writing, warning plaintiff that his overall work performance was not acceptable. See Exhibit 17. On October 22, 2003, plaintiff was suspended for three days after he was involved in a physical and verbal altercation with a co-worker. See Ventura Aff. at ¶¶ 19-22; Pierre Aff. at ¶ 12-15; Morgan Aff. at ¶ 9-11; Exhibit 14. Following the October 22, 2003

incident, plaintiff received a memorandum from defendant which highlighted its policy regarding zero tolerance for violence in the workplace and informed plaintiff that any future offense may result in his discharge. See Exhibit 14.

On April 14, 2004, Pierre met with plaintiff to discuss plaintiff's failure to maintain his cleaning schedule. See Exhibit 18. On July 12, 2004, Pierre met with plaintiff to discuss plaintiff's noncompliance with the posted food service portion rules. See Pierre Aff. at ¶ 9; Exhibit 19. On October 15, 2004, Morgan observed that plaintiff was absent from his work station and failed to complete his assigned duties. See Morgan Aff. at ¶ 12-14; Exhibit 21. On October 29, 2004, plaintiff verbally and physically threatened Morgan. On November 8, 2004, plaintiff along with a union delegate met with defendant to discuss said incident. See Ventura Aff. at ¶¶ 38-42; Pierre Aff. at ¶ 16-20; Morgan Aff. at ¶ 21-25; Exhibit 15. On November 10, 2004, after eighteen months of employment, plaintiff was terminated. See Exhibit at 15.

As reflected above, many of the warnings plaintiff was given regarding his work performance and behavior pre-date the time in May 2004 when people at work allegedly became aware of plaintiff's girlfriend's HIV status. As the Supreme Court noted in St. Mary's Honor Center, 509 U.S. at 509, the defendant need only produce "evidence which *taken* as *true*, would *permit* the conclusion that there was a nondiscriminatory reason for the action." Id. at 509 (emphasis in original). Defendant has thus met its burden of production demonstrating that plaintiff's work performance and behavior was the non-discriminatory reason for plaintiff's termination. The record evidence shows that plaintiff's work performance was unacceptable, and that he was dismissed from employment due to his disruptive and inappropriate conduct toward co-employees, and not because he was perceived to be HIV positive. Accordingly, assuming

plaintiff had established a *prima facie* case, the "presumption raised by the plaintiff's prima facie case is rebutted, and drops from the case." St. Mary's Honor Center, 509 U.S. at 507; James v. N.Y. Racing Association, 233 F.3d 149, 154 (2d Cir. 2000).

**Plaintiff's Burden**

As defendant has articulated a legitimate, non-discriminatory reason for plaintiff's termination, the burden shifts back to plaintiff to present evidence for a reasonable jury to conclude that the articulated reason was really a pretext for discrimination. Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000). Plaintiff fails to provide any evidence that defendant's reason was pretexual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. Plaintiff fails to demonstrate by admissible evidence that he was perceived to be HIV positive and that defendant terminated his employment based on discrimination. Plaintiff merely disputes that his employment conduct was inappropriate, or that his work was unsatisfactory. Niagra Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 175 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact.").

Plaintiff points to performance evaluations in which his performance was rated good or fair, as raising a disputed issue of fact regarding the legitimacy of defendant's explanation for his termination. See Pl's Supp. in Opposition at 1-2. The fact that plaintiff received prior positive evaluations does not, in itself, demonstrate that his later termination, and defendant's proffered explanation for it, are unworthy of credence. Ofoedu v. St. Francis Hosp. and Medical Center, No. 04 CV 1707, 2006 WL 2642415, at *16 -17 (D.Conn. Sept. 13, 2006).

15

Moreover, even drawing all inferences in plaintiff's favor, although his evaluations reflected some improvement in his performance, they were certainly not stellar. Each of the evaluations states that plaintiff needs to improve his performance. For example, as previously noted, plaintiff's interim work evaluation of June 18, 2003, states that plaintiff "must improve in all aspects." See Plaintiff's Evaluation ("Exhibit 29"). Plaintiff's interim work evaluation of July 28, 2003, states that although plaintiff has improved his quantity of work that it "must continue to improve." See Plaintiff's Evaluation ("Exhibit 30"). Plaintiff's annual work evaluation of May 26, 2004, notes his three day suspension and states that he "needs to be consistent in maintaining a satisfactory level of cleanliness in the cafeteria" and "needs to show continued improvement in areas of peer interactions." See Plaintiff's Annual Job Performance Evaluation ("Exhibit 31").

Plaintiff's reviews reflect his average to below average performance and do not raise an issue of fact regarding defendant's legitimate non-discriminatory reason for his termination. Plaintiff's arguments are based on his own opinions of his qualifications and performance, and his disagreement with defendant's assessment of his performance and the events that occurred. While plaintiff may disagree with defendant's assessment of his performance, he has produced no evidence to support his discrimination claims. See Jimoh v. Ernst & Young, 908 F.Supp 220, 226 (S.D.N.Y. 1995) (an employee's disagreement with his employers evaluation of his performance is insufficient to establish discriminatory intent). Plaintiff's subjective view of his capabilities does not bind the employer. See Vanhorne v. NYC Transit Auth., 273 F.Supp.2d 209, 214 (E.D.N.Y. 2003) (a plaintiff's conclusory assumptions as to the reason for an employment decision is insufficient to support an inference of discrimination). Therefore, no reasonable jury could find that plaintiff has met his burden of proving that defendant's decision to terminate his employment

was motivated by his perceived HIV status.

Furthermore, plaintiff ceased to be otherwise qualified for his job when he engaged in misconduct in violation of defendant's workplace policy and/or posed a direct threat to the health or safety of others. See, e.g., Baldwin v. North Shore University Hosp., No. 05 CV 2472, 2007 WL 118016, at *7 (E.D.N.Y. Jan. 18, 2007) (numerous complaints from patients about employee is legitimate, non-retaliatory reasons for employee's termination); Gueye v. Evans, No. 04 Civ. 6029, 2006 WL 3298427, at *5 (S.D.N.Y. Nov. 13, 2006) (plaintiff's aggressive and inappropriate behavior during two separate altercations is legitimate, non-retaliatory reason for employee's termination); Bogdan v. N.Y. City Transit Auth., No. 02 Civ. 09587, 2005 WL 1161812, at *8 (S.D.N.Y. May 17, 2005) (multiple complaints of poor job performance establish legitimate, non-retaliatory reasons for employee's termination); Satterfield v. United Parcel Service, Inc., No. 00 Civ. 7190, 2003 WL 22251314 at *14 (S.D.N.Y. Sept. 30, 2003) (violations of policy, inappropriate absences, appearing in unauthorized work area, and insubordination constituted non-discriminatory reasons); Velasquez v. Goldwater Memorial Hosp., 88 F.Supp.2d 257, 261 (S.D.N.Y. 2000) (finding that the plaintiff's "well documented disciplinary problems" provided non-discriminatory reason for her termination).

The record clearly establishes that defendant terminated plaintiff for legitimate non-discriminatory reasons. Plaintiff fails to produce any evidence to establish that his termination was motivated by discrimination. Accordingly, defendant's motion for summary judgment should be granted and plaintiff's complaint should be dismissed.

### Plaintiff's State Law Claim

Plaintiff further alleges that defendant discriminated against him in violation of New York State Human Rights Law ("NYSHRL"), Executive Law § 296. See Amended Complaint at ¶¶ 26-29. The state claims are governed by the same McDonnell Douglas burden-shifting framework discussed above. See Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 117 n. 1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims."); Lederer v. BP Products North America, No. 04 Civ. 9664, 2006 WL 3486787, at *7 (S.D.N.Y Nov. 20, 2006). As such, defendant's motion for summary judgment should also be granted with respect to plaintiff's claims arising under New York State Human Rights Law.

### CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for a preliminary injunction should be denied and defendant's motion for summary judgment should be granted. It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith and therefore, *in forma pauperis* status should be denied for purpose of any appeal. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED:

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: June 27, 2007
      Brooklyn, New York